UNITED STATES ex rel. Edward THOMPSON, Plaintiffs,

v.

Wayne HAYS et al., Defendants.

UNITED STATES ex rel. Anthony D. CENNAMO et al., Plaintiffs,

v.

Elizabeth L. RAY et al., Defendants.

UNITED STATES ex rel. Anthony R. MARTIN–TRIGONA et al., Plaintiffs,

v.

Wayne L. HAYS et al., Defendants.

Civ. A. Nos. 76–1078, 76–1132 and 76–1140.

United States District Court, District of Columbia.

Oct. 26, 1976.

W. Edward Thompson, Washington, D. C., for plaintiffs in No. 76–1078.

Robert Ashbaugh, U. S. Dept. of Justice, Washington, D. C., for government, plaintiff.

Judah Best, Roslyn A. Mazer, Washington, D. C., for defendant Hays.

Albert J. Ahern, Jr., Baileys Crossroads, Va., for defendant Ray.

Anthony D. Cennamo, Columbus, Ohio, George R. Douglas, Jr., Washington, D. C., for plaintiffs Cennamo and Douglas, pro se.

Joel D. Joseph, Washington, D. C., for plaintiffs in No. 76–1140.

Richard Janis, and James E. Sharp, Washington, D. C., for defendant Gray.

Jacob Dweck, Washington, D. C., for defendant Gosny.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Relators in these actions seek to recover under the False Claims Act, 31 U.S.C. §§ 231–32, funds alleged to have been wrongfully claimed from the government by Congressman Wayne Hays and several persons associated with him. The alleged misdeeds upon which the actions are based

were first made public in the May 23, 1976 edition of the *Washington Post.* The front-page newspaper article detailed the relationship between defendant Hays and defendant Elizabeth Ray, whom Hays had hired as a secretary at a salary of $14,000 per year. The newspaper contended that Ray did no secretarial work and was, in fact, Hays' mistress; subsequent articles implicated defendants Kenneth Gray and Donald Gosny in the alleged misuse of government funds. The separate complaints in these cases were filed (1) by relator Thompson on June 16, 1976, (2) by relators Cennamo and Douglas on June 18, 1976, and (3) by relator Martin-Trigona on June 21, 1976. On August 19, 1976, the United States made a special appearance in the case and moved to consolidate the three cases for a hearing on the common question of the jurisdiction of the court over the actions. At the same time, the United States moved to dismiss the cases on the ground that the court was deprived of subject matter jurisdiction by the terms of the False Claims Act.[1]

■ The False Claims Act creates civil liability in persons making claims against the government knowing such claims to be "false, fictitious, or fraudulent." 31 U.S.C. § 231. The controversy in this action arises from the so-called *qui tam* provision of the Act, which allows suits against such persons to be "brought and carried on by any person, as well for himself as for the United States . . . in the name of the United States." *Id.* § 232(B). Whenever such suit is initiated by a private citizen, the plaintiff must serve the Attorney General of the United States with a copy of the complaint and "a disclosure in writing of substantially all evidence and information in his possession material to the effective prosecution of such suit." *Id.* § 232(C). Subsequent to receiving this information, the United States has sixty days in which to decide whether it will carry on the suit. If it declines to do so, the private plaintiff may proceed to litigate the action. The United States bases its motion to dismiss on the provision of § 232(C) that "[t]he court shall have no jurisdiction to proceed with any such suit brought under clause (B) of this section or pending suit brought under this section whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer, or employee thereof, at the time such suit was brought." Thus, the sole question faced by the court on this motion is whether the United States was in possession of the information or evidence upon which the suits are based prior to their initiation by the relators.

In support of its motion to dismiss, the United States has submitted the sworn affidavit of Robert Ashbaugh, an attorney in the Frauds Section of the Civil Division of the Justice Department. Mr. Ashbaugh has been assigned responsibility for the civil consequences and liabilities arising from the Hays-Ray relationship and related matters and is, therefore, qualified to comment upon the Justice Department's activities in this area. According to his affidavit, the official records of the Justice Department reveal that the Department first obtained information regarding the claims made in this action on May 23, 1976, as a result of the *Washington Post* article. Within twenty-four hours, the Federal Bureau of Investigation had begun an investigation at the direction of the Justice Department. By May 27, 1976, a federal grand jury, sitting in the District of Columbia, had been convened and had issued a subpoena to the Clerk of the House of Representatives for the production of payroll records for certain congressional employees, including Elizabeth Ray. Newspaper articles reporting alleged irregularities involving the employment of defendant Gosny by defendant Hays and defendant Ray by defendant Gray appeared prior to the initiation of suit by these plaintiffs. Presumably the Justice

---

1. In addition to the United States' motion to dismiss, all defendants have moved to dismiss on the same ground; defendants have also moved to dismiss counts of relator Martin-Tri- gona's complaint not based on the False Claims Act on the ground that he lacks standing to pursue those claims.

Department also included these persons in the scope of its investigation.

In accordance with the terms of the Act, the Justice Department requested that the relators disclose in writing "substantially all evidence and information" in their possession which was relevant to the effective prosecution of the action. Responding to this inquiry, relator Thompson indicated that his information was based on conversations with persons whose names he either could not remember or could not disclose and on "various reports in the newspapers and television." He added that "[m]uch of my information and allegations are based on information and belief, as I have not done, and am not in a position to do, an intensive investigation of these allegations on my own." Relators Cennamo and Douglas purported to include with the complaint which was served upon the Attorney General "a disclosure in writing of substantially all evidence and information in our possession that is material to the effective prosecution of the suit," but the only materials enclosed were a photocopy of the cover of *The Washington Fringe Benefit*[2] and an article from *Time* magazine entitled "Sex Scandal Shakes Up Washington." Relator Martin-Trigona, through his attorney, responded to the Justice Department inquiry by disclosing that all the evidence and information in his possession was obtained from three sources: "1) the Report of the Clerk of the House of Representatives of the United States, July 1–December 31, 1975, House Document Number 94–384; 2) newspaper sources including the Washington Post and the New York Times; and 3) conversations with individuals who are unwilling to have their identities disclosed." This correspondence between the relators and the Justice Department is appended to

the United States' motion. In his affidavit, Mr. Ashbaugh states, "To the extent that it is specific or reasonably identifiable, the information provided by the relators in their statements of material evidence was known to me and other Department officials prior to receipt of the transmittal letters and prior to the filing of the three *qui tam* actions here relevant."

It thus appears beyond dispute that the evidence and information upon which relators' suits were based was in the possession of the United States prior to the initiation of the suits. All of the evidentiary material which relators are able to identify specifically seems to have been gleaned from sources in the news media which received widespread public attention. The record is clear that the Justice Department was not only in possession of the same information but had in fact acted upon it prior to the filing of complaints by relators. The fact that the Justice Department had already initiated its investigation is reflected in the undisputed assertions by Mr. Ashbaugh that both the F.B.I. and a federal grand jury began to investigate the matter in May, well before the first complaint was filed by relator Thompson on June 16. Relators do not attempt to refute any of the assertions of Mr. Ashbaugh to the effect that their evidence was possessed by the United States prior to filing of their suits. In such circumstances, it is clear that this court is deprived of jurisdiction to proceed with the actions and that they must be dismissed. *See United States v. Aster,* 176 F.Supp. 208 (E.D.Pa.1959), aff'd, 275 F.2d 281 (3d Cir. 1960); *United States ex rel. McCans v. Armour and Co.,* 146 F.Supp. 546 (D.D.C.1956), aff'd, 254 F.2d 90, 102 U.S. App.D.C. 391 (1958) (per curiam).[3]

2. Included in the complaint of relators Cennamo and Douglas is the allegation that Dell Publishing Company, publisher of Elizabeth Ray's novel *The Washington Fringe Benefit,* conspired with defendants Hays and Ray to defraud the United States by obtaining the copyright on the novel. Apparently their theory is that the proceeds from the book should go to the United States since the book was composed on government time and based on defendant Ray's experiences as a government employee.

Accordingly, among the relief sought in their complaint is a declaration that all compensation from the copyrighted materials be held in trust for the United States.

3. Relators attempt to distinguish these and other cases dealing with the jurisdictional provision of § 232(C) by noting that the earlier cases featured different factual and procedural postures from the instant case. Admittedly, the

■ In an effort to avoid a holding that the court has no jurisdiction in these cases, relators have raised a number of objections to the procedure employed by the United States in moving for dismissal. Relators Cennamo and Douglas urge that the United States did not act within the sixty days specified by statute and that it is therefore precluded from entering the case. Under § 232(C) the United States must act within sixty days of service upon the Attorney General as described in that section, but the sixty-day period does not begin to run until service has been effected in the prescribed manner. In other words, the United States has sixty days from the time when the relator serves the Attorney General with a copy of the complaint and a disclosure in writing of the evidence and information in his possession which are material to the effective prosecution of the case. Although the action was filed by relators Cennamo and Douglas on June 18, 1976, the papers were not received by the Justice Department until June 22, 1976, as indicated by the dated file stamp on the papers which were served on the Attorney General. The special appearance of the United States was made on August 19, 1976, which is within sixty days of June 22. Relators Thompson and Martin-Trigona were even later than June 22 in complying fully with the provisions for service upon the Attorney General found in § 232(C).[4]

■ Relator Thompson questions whether the United States can make a "special appearance" only for the purpose of moving to dismiss the action. He argues that the False Claims Act envisions that the United States will either take over the prosecution of the case or allow the relator to proceed with its prosecution. While the statute speaks only of the United States' making an "appearance" and does not expressly provide for a "special appearance," such a special appearance does not seem inconsistent with the purposes of the Act, at least in the circumstances now before the court. By making a special appearance, the United States can raise the issue of jurisdiction without committing itself to prosecution of the case at this time while the criminal investigation is still underway. As the United States has cogently argued, the determination of whether the court has jurisdiction cannot be readily made without its participation because that determination requires a comparison of what the relator knew about the case and what was already known by the United States. Even if the United States were not entitled to enter a special appearance for the purpose of moving for dismissal, such a motion would still be before the court since defendants Hays, Ray, Gray and Gosny have all moved to dismiss, based on the absence of subject matter jurisdiction. Furthermore, even if none of the parties had moved to dismiss on jurisdictional grounds it is the obligation of the court to raise the issue *sua sponte* whenever it appears that subject matter jurisdiction may be lacking. *See* Rule 12(h)(3), *Federal Rules of Civil Procedure.*

■ Relator Thompson further alleges that the action of the Justice Department in moving to dismiss his complaint, a complaint brought by a black man against a white member of Congress, smacks of racial discrimination in that the Department did not so move in another recent case brought under the Act, *United States ex rel. Hollander v. Clay,* 420 F.Supp. 853 (D.D.C., filed March 26, 1976). The defendant in that action is a black Congressman, and the relator is a white law student. This contention provides no defense to a motion to dismiss in the face of the plain command of

circumstances in the earlier decisions were not identical to this case, but all those decisions clearly stand for the proposition that the possession of the crucial evidence or information by the government prior to initiation of suit by the relator is an absolute jurisdictional bar to the relator's going forward with the action. Nothing in the facts presented here serves to abrogate the holdings of the prior case law.

**4.** Relator Thompson did not fulfill the statutory requirement of disclosing to the Attorney General substantially all of the evidence or information on which he relied in initiating suit until his letter of July 19, 1976. Counsel for relator Martin-Trigona disclosed his information in a letter of August 6, 1976.

the Act that "[t]he court shall have no jurisdiction to proceed with any such suit . . . whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States or any agency, officer or employee thereof, at the time such suit was brought." 31 U.S.C. § 232(C). If relator Thompson can establish that the Justice Department acted on the basis of some impermissible motive such as racial discrimination, he may be able to obtain appropriate relief in another lawsuit, but his claim of racial discrimination is not sufficient to confer subject matter jurisdiction upon the court in this case when the terms of the Act itself clearly state that the court "shall have no jurisdiction" in the circumstances here presented.

■ Finally, relator Martin-Trigona objects to dismissal of the entire action on jurisdictional grounds since only one of the six counts in his complaint is predicated on the False Claims Act. He contends that, even if the motions to dismiss made by the United States and by defendants are granted, the other counts, based on alleged violation of various federal statutes, should survive. Defendants, however, have also moved to dismiss these remaining counts on the ground that relator Martin-Trigona lacks standing to pursue them. The only assertion made by relator Martin-Trigona regarding his standing to bring such claims is that he is a federal taxpayer. The Supreme Court had announced a two-pronged standing test for plaintiffs suing in their capacity as federal taxpayers: (1) The suit must challenge an enactment under the taxing and spending clause of Art. 1, § 8, of the Constitution; and (2) it must claim that the challenged enactment exceeds specific constitutional limitations imposed on the taxing and spending power. *United States v. Richardson,* 418 U.S. 166, 173, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Flast v. Cohen,* 392 U.S. 83, 102–03, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Relator Martin-Trigona's remaining five counts fail to satisfy this test; they have nothing to do with legislation passed pursuant to the taxing and spending power of the Congress, but

only with the misuse of government funds by a single member of Congress. Those counts must, therefore, be dismissed along with the action under the False Claims Act for failure of relator Martin-Trigona to establish standing as a federal taxpayer. It is well settled that federal courts do not provide a forum for the sort of "generalized grievances about the conduct of government" which are embodied in those counts. *Flast v. Cohen, supra,* 392 U.S. at 106, 88 S.Ct. at 1956.

In making the motion to dismiss, the United States contends that it is merely deferring a decision as to whether or not defendants should be sued for the false claims which they allegedly made against the government. The United States claims that prosecution for civil liability at this time is premature and could interfere with any criminal investigation of defendants' activities. Furthermore, the United States fears that litigation by the relators, with the evidence and information which they currently possess, could result in an adverse decision collaterally estopping the Justice Department in any future litigation against defendants. These are compelling arguments based on sound principles of the administration of justice, and there is nothing in the record to suggest that the United States has any ulterior motive in moving for dismissal at this time. In any event, the court is bound by the plain language of the statute depriving the court of subject matter jurisdiction where, as here, the information and evidence upon which the suits were based was already in the possession of the United States prior to the suits' initiation.

An appropriate order accompanies this Memorandum Opinion.

### ORDER

FLANNERY, District Judge.

These matters came before the court on the motions of the plaintiff United States and the defendants to dismiss the actions for lack of subject matter jurisdiction. Also before the court are the motion of the United States to consolidate the three sepa-

rate actions and the request of the United States to enter a special appearance, as well as motions by the defendants for award of costs. After consideration of the motions, memoranda submitted in support thereof, opposition thereto, oral argument thereon, and the entire record herein, and for the reasons set forth in the accompanying Memorandum Opinion, it appears to the court that these cases should be consolidated and that the United States should be permitted to make a special appearance. It further appears that the court is deprived of subject matter jurisdiction in these cases by the terms of 31 U.S.C. § 232(C), the False Claims Act, since the evidence and information upon which relators' suits were based were already in the possession of the United States prior to initiation of the suits. Accordingly, it is, by the court, this 26th day of October, 1976,

ORDERED that these suits be consolidated for joint consideration of the common question of this court's jurisdiction to proceed with the actions; and it is further

ORDERED that the United States may make a special appearance in the cases for purposes of hearing the question of the court's jurisdiction; and it is further

ORDERED that the motions of the United States and of defendants to dismiss the actions for lack of subject matter jurisdiction be, and the same hereby are, granted; and it is further

ORDERED that these actions are dismissed,

PROVIDED, however, that such dismissal shall be without prejudice to any right of the United States to assert the allegations herein in its own behalf and by its official legal representatives; and it is further

ORDERED that all motions for award of costs be, and the same hereby are, denied.